# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| ROCK CREEK CAPITAL, LLC,<br><br>    Plaintiff,<br><br> against<br><br>WILMINGTON TRUST NATIONAL ASSOCIATION AS TITLING TRUSTEE FOR XCL TITLING TRUST, FAIR FINANCIAL CORP., DEFI AUTO, LLC, CRAIG NEHAMEN, and BRADLEY STEWART,<br><br>    Defendants. | Civil Action No. _____ |

## DEFENDANT DEFI AUTO, LLC'S NOTICE OF REMOVAL

**TO THE HONORABLE JUDGES OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS:**

  **PLEASE TAKE NOTICE** that Defendant defi AUTO, LLC ("defi AUTO"), incorrectly named in the state action as "DEFI SOLUTIONS, LLC," by and through its attorneys, Duane Morris LLP, hereby removes this matter to this Court from the District Court of Tarrant County, Texas, pursuant to 28 U.S.C. § 1332(a). In support of removal, defi AUTO alleges as follows:

  1. Plaintiff Rock Creek Capital, LLC ("Rock Creek" or "Plaintiff"), initiated this action in the District Court of Tarrant County, Texas, by filing its Original Petition on or about August 26, 2022. A copy of the Complaint is attached hereto as **Exhibit A**.

  2. defi AUTO was served on September 7, 2022. A copy of the proof of service is attached hereto as **Exhibit B**.

3. This Notice of Removal is timely because it is being filed thirty (30) days from the date on which it was served. *See* 28 U.S.C. § 1446(b); Ex. B.

4. Plaintiff alleges, among other things, that Defendants committed fraud, breach of contract, and other tortious acts surrounding an asset purchase agreement and transfer between Plaintiff and Wilmington Trust National Association ("Wilmington"), the titling trustee for XCL Titling Trust ("XCL") (hereinafter referred to as the "APA"). *See* Ex. A ¶¶ 22–50. Plaintiff's claims against defi AUTO hinge on its assertion that defi AUTO made post-closing "misrepresentations" and provided incomplete documents related to the Purchased Assets[1] Plaintiff had acquired from the APA. *See* Ex. A ¶¶ 23, 30, 41, 47. Specifically, Plaintiff asserts (1) fraud as against all defendants; (2) negligent misrepresentation as against all defendants; (3) breach of contract as against XCL; (4) civil conspiracy as against all defendants; (5) tortious interference with contractual relations as against all defendants; and (6) agency liability as against all defendants. *See* Ex. A ¶¶ 22–50.

5. Plaintiff's Complaint seeks exemplary, compensatory, and consequential damages, in addition to attorneys' fees and costs, and asserts compensatory damages in excess of $1,000,000. Ex. A. ¶ 12.

---

[1] The APA contemplates that, as of Closing, Plaintiff would acquire "the Seller's right, title, and interest in and to all of the following assets, properties, and rights of the Seller" as "Purchased Assets." Ex. A at Exhibit "A" ¶ 2.01. These "Purchased Assets" include "Vehicles and Acquired Contracts" in addition to "all Customer Receivables collected in respect of the Acquired Contracts." *Id*. at ¶ 2.01(a). Importantly, "Purchased Assets" also include "copies, of all books, records and data that relate to any of the Vehicles, the Customer Contracts, the Customer Receivables, or the Vehicle Related Assets (collectively, "Books and Records"). *Id*. at , ¶ 2.01(b). Because "Customer Contracts" encompass the "XCL Contract," which is defined as "a fixed-term lease agreement originated under the XCL lease program sponsored by an Affiliate of Uber Technologies, Inc.," the Leases that are the subject of this lawsuit and all of the information related thereto were "Purchased Assets" owned by Plaintiff as of the Effective Date.

**THE REQUIREMENTS FOR REMOVAL UNDER 28 U.S.C. § 1332 ARE SATISFIED**

6. This case is removable because this Court has original subject matter jurisdiction on diversity grounds under 28 U.S.C. § 1332(a), which affords district courts original jurisdiction over all civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states; (2) citizens of a State and citizens of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state as plaintiff and citizens of a State or of different states.

7. Here, diversity jurisdiction is satisfied because Plaintiff has alleged that it is an LLC formed in Wyoming with a principal place of business in Texas. Ex. A ¶ 2. All of the Defendants are citizens of different states for the reasons set forth in Section A below. And although Plaintiff alleges that defi AUTO's principal place of business is also in Texas, the citizenship of a limited liability company is based upon the citizenship of its members—not its principal place of business. *See Birdow v. State Farm Mut. Auto. Ins. Co.*, No. 3:21-CV-2165-B, 2021 WL 5448973, at *4 (N.D. Tex. Nov. 22, 2021) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990)). As set forth below, defi AUTO's members are all entities formed in Delaware. Thus, because Plaintiff's citizenship is diverse from all Defendants, removal is proper pursuant to 28 U.S.C. § 1332(a).

8. Even assuming that defi AUTO's alleged principal place of business could be considered as part of the diversity inquiry (which the Northern District oF Texas has made clear it cannot), defi AUTO's citizenship should nevertheless be disregarded on the basis of fraudulent joinder. Specifically, Plaintiff's alleged damages stem from the APA it entered into with Wilmington, Fair, and XCL—not defi AUTO. It is clear from the face of the APA that defi AUTO

was not a party to the APA and cannot be held liable for claims arising from it. In fact, it is beyond dispute that defi AUTO is, by definition, a "non-recourse" party who explicitly cannot be held liable for and any "Claim, action or suit based upon, arising out of, or related to [the APA], or the negotiation, execution, *or performance* of [the APA]." *See* Ex. A at Exhibit "A" ¶ 11.13 (emphasis added).

9.      Plaintiff attempts to wave away these issues by invoking a term of its own invention. defi AUTO, according to Plaintiff, was the "servicer of record for all of the Leases." Ex. A ¶ 9. Yet the APA makes clear that it was Fair itself who was the loan servicer, responsible for servicing the Leases and maintaining the accuracy of the data that it housed on defi AUTO's systems. *See* Ex. A at Exhibit "A" ¶ 6.11 & "Recitals."[2] To the extent defi AUTO took any action related to the Leases, it did so at Fair's direction and/or under the terms of its Master Agreement with defi AUTO's predecessor, Fiserv Automotive Solutions, attached hereto as **Exhibit C**.[3] The

---

[2] The APA's Recitals expressly recognize that "Seller [Fair] has been operating various monthly car subscription and fixed-term lease services for pre-owned vehicles," and then later the APA contemplates that Plaintiff would assume that role immediately upon the Closing of the APA as follows: "As of the Closing Date, all rights, obligations, liabilities and responsibilities with respect to the servicing of the Purchased Assets shall pass to Buyer, and the Seller [Fair] *shall be discharged from servicing liability thereafter*." Ex. A at Exhibit "A" ¶ 6.11 (emphasis added).

[3] The "Client Obligations" provision of Fair's Master Service Agreement verifies that defi AUTO was simply a facilitator of data verified and warranted by Fair. Specifically, the Master Agreement provides, in pertinent part:

> Input. Client [Fair] shall be solely responsible for the input, transmission, and delivery to and from Fiserv [defi AUTO] . . . of all information and data required by Fiserv to perform the Services unless Client has retained Fiserv to handle such responsibilities, as specifically set forth in any ASP and BPO Services Schedule. . . . Client shall determine and be responsible for the authenticity, accuracy, and completeness of all information, data, and instructions submitted by Client to Fiserv. Fiserv is not obligated to check for error or omissions in any such information, data, or instructions and/or to correct, cancel, or amend any action in connection with the Services once Fiserv has received instructions to complete such action."

Ex. C at ASP and BPO Services Exhibit to Master Agreement ¶4(c). As further explained below, these obligations ended on January 25, 2021—months before the APA between the other Defendants and Fair was ever executed. Ex. C at ¶ 7(a).

absence of defi AUTO as a party to the APA underscores defi AUTO's purely ministerial role in the relationship.  *See* Ex. A at Exhibit "A."

10. Despite this fatal legal reality, Plaintiff has joined defi AUTO as the only defendant with a Texas principal place of business in an improper attempt to destroy complete diversity.  This is improper because, not only is a Texas principal place of business irrelevant for purposes of establishing diversity, but Plaintiff has relied upon patently false facts in an attempt to destroy diversity.  The undisputed facts cannot establish a plausible claim against defi AUTO as a matter of law, which means that Plaintiff would be unable to establish a cause of action against defi AUTO in state court.  Thus, defi AUTO respectfully requests that this Court disregard defi AUTO's Texas principal place of business. Without defi AUTO as an improperly-joined Texas domicile, complete diversity exists and the Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a).

### A. Because Plaintiff and Defendants are diverse, removal is proper.

11. Plaintiff alleges compensatory damages "in amount still increasing but no less than $1,000,000." Ex. A ¶ 12. This satisfies the amount in controversy requirement of the removal test. Thus, the only remaining inquiry is whether the "real parties to the controversy" are diverse from Plaintiff's domicile.  *See Bynane v. Bank of N.Y. Mellon as Trustee for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 886 F.3d 351, 356 (5th Cir. 2017) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("In determining diversity jurisdiction, 'a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of the real parties to the controversy.'")). Because all Defendants are citizens of different states than the Plaintiff, removal is proper.

12. Upon information and belief, Plaintiff is a Wyoming limited liability company with at least one member[4] who likely resides in the State of Texas. Thus, for diversity purposes, Plaintiff is a citizen of the State of Texas. *See Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017) ("A party seeking to establish diversity jurisdiction must specifically allege the citizenship of every member of every LLC or partnership involved in a litigation.").

13. Defendant defi AUTO is an LLC whose single-member is defi SOLUTIONS Group, LLC. defi SOLUTIONS Group, LLC, in turn, has the following members: BCV DS AIV, L.P.; BCV DS AIV (Coinvest), L.P.; WP XII Auto Inc.; WPF Auto Inc.; Fiserv AS Holdings I Co.; and Fiserv AS Holdings II Co. Because all of the corporate entities are formed in Delaware, this establishes that defi AUTO, LLC is a citizen of Delaware for purposes of determining diversity jurisdiction. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("[T]he citizenship of a LLC is determined by the citizenship of all of its members.").

14. As for Defendant Wilmington Trust National Association ("Wilmington"), Plaintiff alleges this national association to be the titling trustee for XCL Titling Trust. Ex. A ¶ 4. When, as in Wilmington's case, a trustee is a defendant, the "trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *SGK Props., L.L.C. v. U.S. Bank Nat'l Assoc. as Trustee for Lehman Bros. Small Balance Com. Mortg. Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 940 (5th Cir. 2018) (quoting *Navarro*, 446 U.S. at 464). When this is the case, the citizenship of the trustee controls. *Navarro*, 446 U.S. at 464–66. Upon information and belief, Wilmington maintains its main office in Wilmington, Delaware. Thus, for diversity purposes,

---

[4] The Court will note that **Exhibit D** lists "Chad Welch" as the LLC member, which likely makes Texas a proper domicile for the Plaintiff. *See Preston v. Tenet Healthsystem Mem. Med. Ctr., Inc*., 485 F.3d 793, 798 (5th Cir. 2007) (holding that for diversity purposes, the citizenship of an individual is determined by his or her domicile).

Wilmington is a citizen of the State of Delaware. *See also Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) (a national banking association organized under a federal charter is a "citizen of the State in which its main office, as set forth in its articles of association, is located").

15. Upon information and belief, Defendant Fair Financial Corporation ("Fair") is a Delaware corporation with its principal place of business in California. Thus, for diversity purposes, Fair is a citizen of the States of California and Delaware. *See* 28 U.S.C. § 1332(c)(1) (a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").

16. Upon information and belief, both of the individual Defendants, Craig Nehamen and Bradley Stewart, reside in the State of California. Thus, their domicile for purposes of diversity jurisdiction is also California. *See Preston*, 485 F.3d at 798.

### B. Because defi AUTO was improperly joined, complete diversity of the remaining Defendants establishes this Court's jurisdiction.

17. Although Plaintiff has alleged defi AUTO has a principal place of business in Texas, this does not establish the citizenship of a limited liability company for diversity purposes. Regardless, defi AUTO is a "sham defendant" improperly joined to defeat this Court's diversity jurisdiction. *See Smallwood v. Illinois Cent. R. Co*., 385 F.3d 568, 575 (5th Cir. 2004). This provides an additional ground for removal.

18. The Fifth Circuit has "recognized two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)). This inquiry focuses on the second test for improper joinder, which, stated differently, requires proof "that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id*.

19. The Court resolves an improper joinder inquiry by either (1) conducting a Rule 12(b)(6)-type analysis, "looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant," or (2) piercing the pleadings and conducting a summary inquiry to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. *Id*. at 573-74. The Fifth Circuit has expressly sanctioned the Court's consideration of "any other fact that easily can be disproved if not true." *Id*. at 574, n. 12 (citing *Irby*, 326 F.3d at 648–49).

20. Here, Plaintiff has proffered patently false facts in an attempt to improperly "hook" defi AUTO into the action for purposes of destroying diversity. Specifically, Plaintiff's state-court petition incorrectly alleges the following:

> On July 19, 2021, ROCK CREEK purchased 17,498 vehicle lease contracts with a total outstanding balance of $70,262,288.57 from XCL (the "Leases"). At the time of purchase, DEFI was the servicer of record for all of the Leases.

Ex. A at ¶ 9. However, the contracts themselves demonstrate that this is not true. *See* Ex. A (APA); Ex. C (Master Agreement); *see also* defi AUTO's May 7, 2021 Statement of Work ("SOW"), attached hereto as **Exhibit E**. As Fair's Master Agreement with defi AUTO's predecessor demonstrates, defi AUTO hosted Fair's information and performed other "Services" as required by discrete Statements of Work—but it was always Fair's obligation to maintain the accuracy of the data that Fair "input" into defi AUTO's platform. Ex. C at ASP and BPO Services Exhibit to Master Agreement ¶ 4(c).

21. Moreover, the last Statement of Work that Fair and defi AUTO's predecessor executed was entitled "Fair Servicing Shut Down." Ex. E. It removes any doubt as to whether defi AUTO was responsible for servicing the Leases as follows:

> The Term of [Fair's] Agreement expired on 1/25/21 and [Fair] is not planning to renew. [Fair] has requested the cost to shut down their

> company instance in LeaseMaster and V8. This project will shut down the Client companies and decommission Client services in LeaseMaster, V8 and BPO.

Ex. E ¶ 1. This SOW demonstrates that defi AUTO and Fair's services agreement terminated in January of 2021 and defi AUTO decommissioned its services ***before*** Plaintiff admittedly purchased the vehicle contracts that form the basis of Plaintiff's complaint. Because the contracts at issue demonstrate that defi AUTO merely facilitated Fair's Lease service platform and maintained no liability on the data provided—and in fact ceased performing that role before the APA was even executed—this negates any causal link between defi AUTO and Plaintiff's alleged damages. Without a viable causation theory, Plaintiff cannot conceivably allege any claim against defi AUTO. *See Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 394-94 (5th Cir. 2000) (finding no error in "the district court's determination that the conspiracy claim asserted against the in-state distributors was fraudulent" after concluding that summary judgment-type evidence "completely negate[d] their being a party to any conspiracy such as alleged in the amended complaint").

22.     Additionally, because Plaintiff undisputedly owned all of the information that defi AUTO purportedly misrepresented as of the Effective Date of the APA, no amount of re-pleading can ever establish a claim against defi AUTO. Plaintiff's entire damages theory is based upon misrepresented values in the vehicle contracts it purchased from the other diverse Defendants. *See* Ex. A ¶¶ 28, 33, 43 & 48. However, Plaintiff's only basis for defi AUTO's purported liability is a handful of conclusory allegations that defi AUTO (1) made unspecified "fraudulent statements" and "material misrepresentations," (2) "did not exercise reasonable care," (3) had a "meeting of the minds" with the other diverse Defendants "to accomplish an unlawful purpose or a lawful purpose by unlawful means," and (4) "interfered and continue to interfere with Plaintiff's ability to fulfill its contractual duties." *See* Ex. A, at ¶¶ 23, 32, 41–42 & 47. But the "information" Plaintiff alleges was misrepresented is actually one of the "Purchased Assets" that Plaintiff owned

as of the APA's effective date. *See* Ex. A at Exhibit "A" ¶ 2.01. Thus, Plaintiff could not have relied upon any purported misinformation from defi AUTO because Plaintiff owned all of information that it globally contends was "misrepresented."

23. These undisputed facts establish that defi AUTO's services ended well before Fair and the other diverse Defendants sold and transferred the vehicles, service contracts, and "Customer Receivables" to Plaintiff. Because Plaintiff owned the same information it complains defi AUTO misrepresented, and had assumed liability for all of the servicing to be done after the APA's Effective Date,[5] defi AUTO could not have played any role in exchanging information that Plaintiff could have justifiably relied upon. Nor could defi AUTO's purported role have ever caused Plaintiff's alleged damages. This leaves "no reasonable basis for the district court to predict that the plaintiff might be able to recover against" defi AUTO. *Smallwood*, 385 F.3d at 573. Accordingly, defi AUTO was improperly joined, and diversity jurisdiction is established.

## VENUE

24. Because this Court is the United States District Court for the district and division embracing the state court where the Complaint was filed, it is the appropriate court for removal under 28 U.S.C. § 1446(a).

---

[5] The "Servicing/Collection After Closing" clause of the APA expressly negates any theory that defi AUTO could have caused Plaintiff damages because Plaintiff assumed liability for damages resulting from servicing the assumed contracts as follows:

> The Purchased Assets shall be sold and conveyed to Buyer on a servicing-released basis. As of the Closing Date, all rights, obligations, liabilities and responsibilities with respect to the servicing of the Purchased Assets shall pass to Buyer, and the Seller shall be discharged from servicing liability thereafter.

Ex. A at Exhibit "A" ¶ 6.11.

## PROCEDURAL COMPLIANCE

25. All Defendants who have been joined and served consent to the removal of this case to federal court. The Defendants' Consent to Removal forms are attached hereto as **Exhibit F**. *See* 28 U.S.C. § 1446(b)(2)(A).

26. defi AUTO will promptly serve Plaintiff with this Notice of Removal and file a copy of this Notice of Removal with the clerk of the District Court of Tarrant County, Texas, pursuant to 28 U.S.C. § 1446(d).

27. Pursuant to the Northern District Local Rule 81.1(a)(4)(A)-(D), the following items are also attached hereto:

   A. An index of state court documents and file dates is attached hereto as **Exhibit G**.

   B. A copy of the state court docket sheet is attached hereto as **Exhibit H**.

   C. A true and correct copy of all documents filed in the state court action is attached hereto as **Exhibit I**.[6]

   D. The Certificate of Interested Persons is attached hereto as **Exhibit J**.

28. Should Plaintiff move to remand this case, defi AUTO respectfully requests an opportunity to respond more fully in writing, including submission of additional authority and declarations.

## PRAYER

**WHEREFORE**, defi AUTO, LLC respectfully requests that the Court find that defi AUTO was improperly joined as a defendant in the above-entitled action and that the action be removed from the state district court of Tarrant County, Texas, to the U.S. District Court for the Northern District of Texas, Fort Worth Division.

---

[6] Certified copies of the state court docket are being sent by the Tarrant County district clerk's office and will be supplemented once received. A copy of the receipt from the clerk is attached hereto as **Exhibit K**.

Respectfully submitted,

*/s/ Leslie Ritchie Robnett*
Leslie Ritchie Robnett
Texas Bar No. 24065986
**Duane Morris LLP**
777 Main Street, Suite 2790
Fort Worth, TX 76102-5369
Telephone: +1 817 704 1000
Fax: +1 817 704 1001
Email: LRRobnett@duanemorris.com

**Attorney for Defendant defi AUTO, LLC**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served on all counsel of record via e-filing with the Court's CM/ECF system and via email as provided in the Federal Rules of Civil Procedure on this 7th day of October, 2022. The same was also filed and e-served to the parties on record in state court on this the 7th day of October, 2022.

*/s/ Leslie Ritchie Robnett*
Leslie Ritchie Robnett